Mr. Ball, we're ready when you are. My name is Mr. Shepard, Your Honor. I'm here on behalf of 141 Two cases ahead. That's okay, Your Honor. It's my privilege to be here today on behalf of 141 separate plaintiffs, most of whom are currently active or retired federal law enforcement agents. The district court in this case, the heart of the decision, the court found that the crucial component of the plaintiff's claims in this case, in other words, the essence of what caused them harm, was that Mr. McCloud, who you've learned from the briefs, committed suicide, lied about the bona fides of the bond fund when he was operating this Ponzi scheme. And because in the district court's view, the plaintiff's harm was dependent upon those lies, this case necessarily arises out of misrepresentations and therefore Section 2680H, which is commonly referred to as the intentional tort exceptions to jurisdiction, applies. In other words, in the district court's view, because a misrepresentation or a lie was a central cause of the harm, it obliterates all other negligence in the case. But the Supreme Court's decision No, the court actually didn't say that. It said the case arises out of a misrepresentation. Which happens to be the statutory language. That's correct, Your Honor. It's my language that the effect of the court's ruling is whether it arises out of misrepresentation and what arises out of means. You're exactly correct, Your Honor. The Supreme Court in the United States v. Sheridan teaches us that the district court is wrong. The court began its discussion in that case discussing its prior decision in a case called Munitz and also Judge Harlan, later Chief Justice Harlan's reasoning in a case called Pinella out of the Second Circuit. Both of those cases involved assaults and batteries on inmates in the custody of the Bureau of Prisons. And in both cases, notwithstanding the fact that the assaults clearly gave rise to the harm in the case, the court said that the proceedings could go forward because the government had an antecedent duty, a pre-existing duty to prevent the intentional tort, to prevent the assaults. A pre-existing duty, a distinct and independent tort, independent of a shooter here. It did not matter in Sheridan that this fellow happened to be a member of the military. The court found that I read the case that there was an independent duty to intervene by the corpsman, the naval people there. That's correct, Your Honor, and that's why that case, I'm sorry, go ahead. I understand why you point to it, but I have a little difficulty in a Ponzi scheme, which the heart and core of which is intentional misrepresentation. Right. Well, the Fifth Circuit gives us... And the word arising under is a real trouble point for you, because that is the statute, and arising from sweeps and tweets broadly. And so I've mentioned that to show you for whatever value it may be to you. Your Honor, the reason that Sheridan reached the conclusion that it did, as you just recognized, was the corpsman who found the drunken off-duty sailor in the hospital. They had a duty separate and independent of the employment status of the drunken sailor. That duty arose from Navy regulations that said you can't be drunk on post and you can't possess firearms. And they undertook to help him. But the duty here of the head of the government was to correct or to cause the proof statements to be made. No, Your Honor. What other duty did they have? The independent duty in this case arises from several sources. One is the GSA regulations. The GSA regulations make solicitation, the solicitations that were the lies, the lies were illegal solicitations in this case. The government, yes, when McLeod stood up in a GSA-controlled facility and pitched his bogus fund, that was illegal behavior. It's illegal under the GSA anti-solicitation regulations, and the government had a duty to prevent that solicitation. But the question is, does it arise out of a misrepresentation? And the answer is no. The Fifth Circuit encapsulates the holding in Sheraton quite nicely. And if I may quote it, it says, Sheraton stands for the principle that the negligence claims related to a government employee's 2680H intentional tort may proceed where the negligence arises out of an independent antecedent duty unrelated to the employment relationship between the tortfeasor and the United States. You're exactly correct, Judge Carnes, whether or not this arises out of. And if you just look at the misrepresentation, you have to say, but for the misrepresentation, no one would have been harmed. That's the reasoning of the district court. What about the Zelaya case? Your Honor, didn't the SEC have an independent obligation to notify the Security Investor Protection Corporation? The answer is yes, they did. They had statutory duty to do so. And they breached that duty. Right. But there was held to be no FTCA coverage or liability because it arose out of a misrepresentation. Classic Ponzi scheme, same thing we've got here. Your Honor, the critical distinction with respect to Zelaya arose only in connection with the employment status of the person responsible for communicating that language. In other words, the SEC, the allegation in Zelaya was that the SEC had to communicate that up to another entity because they had knowledge. But that statutory duty kicks in only because they were SEC employees. I mean, wasn't that also a function of the SEC? I mean, the SEC exists in order to regulate the securities industry. But does the DEA exist to financially educate its employees? Is that the purpose of the DEA? Is that its function? No, they have a statutory duty to provide educational services that we've outlined through the TSP Act and other statutes. But they have counselors within their agency assigned to do that. Zelaya was not wrongly decided. That's not my position, Your Honor. But this case is nothing like Zelaya. It is like it in that there were government employees who breached a clear statutory duty. Yes. And still the misrepresentation, rising out of misrepresentation exception. Why? The court held that the person who made the misrepresentation was McCloud. Let's assume he was a government employee. Well, I can't tell from your pleadings. You've gone back and forth. First one said he wasn't. Second one said he was. And I think you tried to take that back in your briefs. No, Your Honor. I'm not taking it back. I added that as another potential to the amended complaint. Don't keep me in suspense. Was he or was he not? We think that that's a factual issue. We think he could be. The reason I added him in the amended complaint was to allege negligence per se. But I didn't back away from my original complaint which says that there were other government employees, not McCloud, who were negligent in this case. Whichever one flies, that's the one you're on. Well, Your Honor, I do plead in the alternative, yes. But that doesn't... I thought we were here on your pleadings. We are, Your Honor. Okay, so what have you pled about his employment status? I've pled that he's an employee, but the... Of the government. Yes, Your Honor, but... And you're stuck with that, right? Fine, I'm stuck with it. But the naval corpsman in Sheridan was also a government employee. Actually, under Sheridan, does it matter what the person who did the intentional tort was? Does it matter if the person was a government employee or not? If there's an independent separate duty of the agency, does it matter that the person who engaged in the intentional tort was a government employee or not if the people that you're suing for negligence were government employees? The answer is no and yes. If you look at Justice Harlan's reasoning, no, seriously, Justice Harlan said in order for the... Respond to my facial gesture. I'm sorry. In order for the exception to apply, Your Honor, you have to have a government employee acting within the scope of their employment, okay? Let's assume McLeod was a government employee. He most definitely wasn't acting in the scope of his employment if he was committing illegal acts, soliciting folks. But we're not even focused on that. We're looking at the negligence of other people who had an independent duty to prevent the intentional tort. Sheridan was based on the negligence of the two corpsmen that found the drunk guy. It wasn't based on the negligence of the drunk corpsman who committed the intentional act. And so we're looking at the negligence of the other employees. Forget about McLeod. It doesn't matter whether he's... It doesn't matter whether he is an employee, a guy that walked in off the street, or some independent contractor that they hired. That's the whole point of Sheridan. Just about any Ponzi scheme out there, then they're going to have a claim against the government because most Ponzi schemes, they don't go... They go until the government catches them or until it breaks it and somebody breaks it. So you always have a failure to notify, a failure to have the government to do that of some sort. One can characterize that. You could, Your Honor, but that's not what we're pursuing. That's not our claim in this case. Here you've got independent duties arising from the GSA regulations, the anti-solicitation regulations, the OPM policy that said you're not allowed to solicit business during these seminars. You're not allowed to endorse employees. There's a lot of things that take this away from your typical Ponzi case. I see I'm over my time. I do want to reserve now four minutes, unless you have a question, Your Honor. I'm going to... We'll give you the full five, Mr. Shepard. Ms. McNeil. Thank you, Your Honor. Good morning. Sonya McNeil for the United States. I think the colloquy with Mr. Shepard shows that the panel understands the issue, so I'm happy to answer any questions. Let me ask you what I was asking your colleague, and that is, it seems to me... Let's just take Sheridan for a moment. It seems to me that there actually is a very good analogy to Sheridan, in that in Sheridan, the injuries that the plaintiffs experienced arose out of the intentional acts of the drunken soldier. But there was a separate negligence on the part of the people at the hospital and for failure to enforce the regulations not to bring guns on a drunken soldier with a firearm didn't go out of the hospital. And here, it seems like the intentional act, of course, is McLeod's. The negligence is on the part of the agency employees, DEA agency, for example, who have voluntarily taken on the duty of deciding to financially educate their employees and in negligently and failing to comply with their own regulations by failing to ensure that this person did not speak about or endorse products and that the employees who were setting this up did not have conflicts of interest. And particularly as shown by the fact that there was a high-ranking official in DEA who brought these up on a weekly basis for the injuries that the DEA agents suffered. So I guess my question for you is, why is it not like Sheridan? Well, there are two differences between Sheridan in this case, and either would be dispositive. The first is that in Sheridan, there was no argument that the government's failure itself was within the intentional torts exception. Here, the plaintiff's basic theory is that they believed they were explicitly vouched for McLeod by bringing him in. I'm sorry to interrupt, but that's a different issue, right? I'm not talking about what they believed about Mr. McLeod. I'm talking about their failure to ensure, to follow their own regulations, to ensure that he didn't try to solicit for products. Well, they were there and heard him solicit for products and arranged for meetings between agents and Mr. McLeod on government property, knowing that he was selling them products. I mean, we have to take the allegations and the complaints. So that's what I'm going on. Absolutely. Not on actually what it was that he tried to sell. A couple of points, Your Honor. I mean, first of all, as this court has explained repeatedly, the plaintiff's characterization of their own claims does not mean that while it's true that we look at the plaintiff's allegations, we also have to ask ourselves what the substance of their claim really is. And as this court explained in Zelaya, what's required is a duty that is distinct from misrepresentation and a breach of that duty that is essential to the plaintiff's injury. And I have to take issue with what Mr. Shepard said when he said he appeared to suggest that if McLeod had just come in, it would have all bound up in the fact that because McLeod appeared during seminars at the government's invitation, was presented as someone who could counsel the plaintiffs. I agree with you. I think that's exactly why this happened, that because the government brought him in and did not comply with its own regulations, had it complied with its own regulations, it wouldn't have allowed him to speak because he was violating the, he was violating the rule of soliciting people to buy his products and his services and because the people who brought him in had conflicts of interest. So irrespective of what it was that he told the DEA agents, the misrepresentations he told the DEA agents, this wouldn't have happened. It seems to me there's an independent cause of this. In the same way that, you know, yes, the plaintiffs in Sheridan, their injuries were, they were shot by this drunken soldier. I mean, that's what actually injured them. Well, Mr. McLeod's misrepresentations are what actually injured the plaintiffs in this case. But there is another cause for it in the same way there was another cause for the injuries in Sheridan to the plaintiffs. Yes, Your Honor. But the point is, is that the other, what Your Honor is characterizing as the independent cause, is also separately and independently within the misrepresentation exception. Yes, Your Honor. Maybe I'm missing something. Tell me if I am, Mr. Sheridan, I'm sorry, Mr. Shepard certainly will, about the Sheridan case. The exception only applies if it arises, if the injury arises out of a misrepresentation by a government employee acting in the course of his business as a government employee, correct? Yes, Your Honor. Okay. The Supreme Court made it pretty clear in Sheridan that Carr, the shooter, was not acting within the scope of his employment. That's why they said he just happened to be a government employee. But he wasn't acting in the course of a government employee when he shot somebody. So that didn't apply. The other, the corpsmen were. But if he had been somehow acting in the course of his government business when he shot somebody, it still would have arisen out of an intentional tort by a government employee acting in the course of the government business. I think that's right, Your Honor. Okay. Well, I mean, isn't that what, I mean, the Supreme Court said, look, he's not a government employee. He's not acting in the course of business. He just happened to be a government employee who was a shooter, not as part of his government business. In this case, that amended complaint. And to me, it's a more deliberate decision than the initial complaint. They initially said that McLeod was not a government employee. And y'all came in and said, aha, only government employees subject to government FTCA. So then they amended that, the complaint that we're on and the district court ruled on to say that he was a government, McLeod was a government employee acting in the course of his business. And the district court said, okay, fine, he was. And it arises out of his misrepresentation. Isn't it that simple? It is absolutely that simple, Your Honor. And Judge Rosenbaum, my response to your question was meant only to highlight that even if the court were to believe that the plaintiffs said to the district court what they're now saying on appeal, it would still be within the intentional torts exception because the government negligence that is alleged here is a form of misrepresentation. Their argument is that you can totally set aside McLeod's misrepresentations and then they have a claim. But that's not right because the thing that caused their injury was their belief that the government had vouched for McLeod. Their argument is they relied on the government to bring in people who were trustworthy and that when they saw McLeod there in a seminar promoting his products, they believed that he did so with the government's approval. And as this court has explained in Zelaya, if the basic argument is that the government should have prevented someone else's misrepresentation or facilitated a misrepresentation, that itself is within the misrepresentation exception as the Supreme Court explained in Neustadt. The noncommunication of information that someone might be expected to rely on in the course of making an economic decision, that is also a misrepresentation. So even if we were to say that we have both a breach by McLeod and a breach separately by government employees, the point would be that that breach by government employees also sounds in misrepresentation because their theory is not that McLeod could have just wandered off the street and stopped someone in a hallway and they would have decided to invest with him. This is all wrapped up in the aura of credibility, as this court put it in Boda, that his connection to the government and the government's silence in the face of his promotion of his services conferred on him. And it is that misrepresentation that gives rise to their injuries. Let me go back to something you just said. I think maybe we just have a different understanding of what Sheridan says. But my understanding of Sheridan is it makes no difference whatsoever if the intentional tortfeasor was a government employee at the time, was acting within the scope of his duties as a government employee, was not a government employee. That doesn't matter because we're not looking at that person's behavior. We're looking at the behavior of the people who are being sued for negligence, right? And I think that's what the Supreme Court said when it said, indeed, in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the government, it would seem perverse to exonerate the government because of the happenstance the car was on a federal payroll. Let me just first ask you, are we in agreement that the status of the intentional tortfeasor as a government employee, not a government employee, acting within the scope of duty or whatever, that that doesn't matter to the analysis? That's my first question. And if not, what am I missing? So a couple of points, Your Honor. I mean, first of all, and this is not the basis on which you don't need to agree with me on this in order to affirm. But the point here is that McLeod's relationship to the government is very much bound up in the reason why the plaintiffs were injured. It was because of McLeod's ongoing relationship with the government that they trusted him. And it was because they trusted him that they chose to meet privately with him. But can you answer my question about whether it matters or not to the Sheridan analysis, whether the employee, whether the intentional tortfeasor is a government employee, is acting within the scope of his duties as a government employee or is not a government employee? Does it make any difference whatsoever? Because aren't we just looking at the negligent tortfeasors? So if I were to assume that there was an independent duty that government employees had failed to fulfill and that the failure produced an injury that had no relationship to the shooter's employment status, the shooter could have gotten to the same place, could have gotten drunk, could have stood on a public street with a gun, and could have fired into a car without having had any prior relationship with the government. And that's just not true here. I mean, nobody thinks that McLeod could have stood up in a government retirement benefits seminar and presented to a group of employees if he had not been asked by the government to be there. But it's a separate point to say that in Sheridan there was no argument that the government's failure, so the government's failure to prevent a drunk man with a gun from leaving hospital property, was itself within the intentional torts exception. And here it is. Here the argument is that because, setting aside McLeod's misrepresentations, what government employees themselves did sounds in misrepresentation because it gave, it was an implicit approval of McLeod. Let me say this. I understand how you can say that it sounds in misrepresentation. I know there's a way to do that. And I also understand that we have to look at what the actual claim is. And artful pleading is not a way around this problem. But it seems to me that there is also a separate duty going on here. Because the government voluntarily took on the duty to financially educate its own agents. And had the government not taken on that duty, none of this would have happened. So in doing that, it enacted certain regulations to ensure that it was done properly. Those regulations, which were violated here, according to the allegations, have nothing to do with misrepresentation. They have nothing to do with it. Those duties are things like ensuring that no conflict of interest exists between the person who's doing the hiring of the speaker and the speaker. And things like ensuring that the speaker does not talk about selling his own services or products, irrespective of what he says about them. Those are not misrepresentation kinds of claims. Those are separate duties, independent duties that have nothing to do with what was misrepresented. Or any kind of misrepresentation. And so to me, it seems like the separate duties that the corpsmen had in Sheridan to comply with the regulations to ensure that firearms were not brought into the hospital. And that drunken soldiers who had firearms were not allowed to run around outside the hospital grounds. That's what I'm trying to say. And that's what I don't understand why you think this involves a misrepresentation when we're talking about these two separate duties which are required by regulations. So let me try to do a better job of explaining your Honor. I thought that bridge was crossed, but clearly it wasn't. Allen Stanford committed the misrepresentation. The funniest claims against the SEC were found to be bark. But he found the reason that the allegations that were against the SEC were grounded in misrepresentation. That is the failure of regulatory function here was a grounded itself in misrepresentation from the concept of the Tort Claims Act. And I may perhaps desire it wrong, but I don't understand why my colleague's suggestion can have to jump over itself. Otherwise, then any failure of the SEC and others who may have some when they're auditing, when they're looking at the reviews of filings, et cetera, et cetera, and they don't take action. Those are independent duties and the misrepresentation that they may have failed to discover are now actionable on the Tort Claims Act. And that would be a boon to the plaintiff's bar. It would also make the government liable for Madoff, wouldn't it?  There have been a number of cases involving Ponzi schemes and all have been rejected under the FDCA. Judge Higginbotham, I couldn't put it better. I mean, the only claim that the plaintiffs have pressed in their appellate brief is that the government failed to prevent McLeod from saying what he said. And this court said clearly in Zelaya that the failure to prevent a misrepresentation itself sounds in misrepresentation and thus arises out of misrepresentation. And so even if you were to conceive of this duty as entirely independent of whether or not McLeod is an employee, and of course, Chief Judge Carnes, as you've observed, that's what they've alleged, the independent claim would arise out of misrepresentation and would be barred by the intentional torts exception. I see my time has expired. I'm happy to answer any further questions. Thank you. We ask that the judgment be affirmed. Okay. Mr. Shepard, five minutes. Your Honor, in Sheridan, the failure to comply with the Navy regulations meant that the shot was fired. Here, the failure to comply with the regulations, the GSA anti-solicitation regulations and the OPM guidelines meant that the lie was permitted. Zelaya did not involve facts like that. The regulatory failure, as Judge Higginbotham just referenced, is not founded or related to misrepresentation. We're not saying that the government agents that we're alleging were negligent, not McLeod, were negligent in failing to communicate information or saying something inappropriate. We're saying that a crime was committed in front of them and they didn't stop it. But for those solicitations... But what was the crime that was committed before them? The solicitations, Your Honor, the regulations make them a criminal offense. Intentional misrepresentations. And so the point is that you have to escape the principle that failure to stop intentional misrepresentations does not arise from a claim of intentional misrepresentation. Your Honor, I respectfully disagree because to stop a criminal solicitation does not require the government to communicate information at all. It just requires them to stop the speaker from making an illegal communication. Yes, but the communication... You're going back to the word arising from. Yeah, the injuries in Sheridan arose from the bullet that entered the car. But that doesn't mean that the court said that the injury didn't arise from that because it was a preexisting duty to stop the shooting. Well, you argue that McLeod was violating policies of acting outside of employment. And I have difficulty with that argument because the serviceman in Sheridan was acting outside the scope of his employment, presumably because he's off duty. I don't see where this takes you anywhere. The court was not focused on the drunken sailor in Sheridan, nor are we focused here on the  Let me make one additional point that's important. Well, let me read it to you in brief. To the extent any other government employee may have endorsed McLeod, that employee would have been acting outside the scope of his or her employment because such endorsements are prohibited. And you press that argument again and you reply briefly. Well, that's true, Your Honor, and that's correct. So if you want to focus on... But if that's true and the government points it out, there's no basis for the plaintiff's suit. Let's assume that what my colleague said is correct and that my clients trusted in McLeod because the government brought him in, which is true. That's not what caused them harm. They could have trusted him all day long, but for the misrepresentation... I'm sorry. Go ahead. The reason that would be fatal to your case, if that's true, is that the only waiver of sovereign immunity or for injury that are caused by an employee of the government acting in the scope of his office employment. And by your logic of your argument, you've got nobody out there acting. You don't have somebody to come with and act itself. Sure I do, Your Honor. I've got the agents who witnessed the solicitations and allowed them to occur. They had a duty within the scope of their employment to prevent that. You had agents witnessing McLeod sell his bond fund at retirement seminars. They had an independent duty to stop that. That's the case. The other thing is, it's not just the allegations, Your Honor. The United States Department of Justice Office of Inspector General found that the government... But you argued, but you said emphatically, and I'm quoting you, your language, that to the extent any other government employee may have endorsed McLeod, that employee would have been acting outside her employment because such endorsements are prohibited. Yes, but I'm not... No, Your Honor. The negligence doesn't... That's not who we're saying was negligent in this case. We're saying who was negligent were the other employees who were there, who saw the criminal solicitations and failed to prevent them. That's who we're focused on. If you wanted to say that counts one and two because I added them to say I could try to allege negligence per se, that they're out because that assumes McLeod, fine. But I'm still focused on the employees who were acting within the scope of their employment, who failed to prevent... How could the government not be liable for the Madoff Ponzi scheme? The SEC got complaint after complaint that something's wrong here. You need to look into it, and they didn't do it. There was no independent obligation for them to prevent Madoff lying to government employees. The SEC has a statutory obligation to investigate and put out of business Ponzi schemes. Well, let me ask you this. Could it have been a discretionary function problem instead? I mean, it seems to me like I think that Zelaya came to the right answer, but maybe it was because the agency's function as the SEC is to decide what it's going to do to enforce or not enforce the securities regulations. Absolutely correct. That wasn't the holding of that decision. I understand. But I think what Judge Rosenbaum is trying to say is that what you're talking about, Judge Carnes, is that... It's the right result for the wrong reason. Therefore, the decision, the holding is wrong. I think that the holding in Zelaya was it reached the correct conclusion. I think that Zelaya was incorrect in that it placed emphasis on a broad reading of Section 2680H, which was rejected by the Supreme Court in Shearer. And I've cited numerous cases that say that. The Seventh Circuit discussed it at length. I just want to say that with regard to the allegations, the DOJ OIG itself found that these independent regulations were violated, Your Honor. It's not just the allegations. Thank you, Your Honor. We're going to take one more case before we take a break. So it will be Morgan v. Lawrence County.